Filed 7/29/16  P. v. Sutton CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E064304 |
| v. | (Super.Ct.No. SICRF1456522) |
| NATHAN EUGENE SUTTON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Inyo County.  Candace J. Beason, Judge. (Retired Judge of the Los Angeles Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Dawn S. Mortazavi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Nathan Eugene Sutton was sentenced to three years in state prison for burglary. (Pen. Code, § 459.)[1] He argues that his sentence constitutes an illegal breach of his plea bargain. Given the record before us we cannot accept his argument and will affirm.

I

STATEMENT OF FACTS

The instant proceedings began in April 2014 when the People filed a felony complaint charging defendant with commercial burglary and felony vandalism. (§§ 459, 594, subd. (a).) After competency proceedings resulted in a finding of competence to stand trial, defendant[2] elected to plead no contest in return for probation, 180 days in county jail and a similar period of community service. Imposition of sentence was suspended. Sentencing took place on July 22, 2014.[3]

On August 5, 2014, a new felony complaint was filed charging defendant with another commercial burglary, theft, and receiving stolen property. (§§ 459, 484, subd. (a)/488, 496.) Probation in the first case was ordered revoked.

---

[1] All subsequent statutory references are to the Penal Code unless otherwise specified.

[2] Apparently conservatorship proceedings were pending with respect to defendant.

[3] By the time of sentencing defendant had served the required period in jail, and was released.

Although attempts to resolve the matter(s) were apparently in progress, at a hearing on October 6, 2014, there were indications that yet another case had been filed, and defense counsel asked for a delay in hopes of a "global settlement." The new charge proved to be a charge of misdemeanor vandalism relating to damage to jail property.

Negotiations evidently continued, and on December 16, 2014, a global settlement was discussed. Significantly, the People indicated that the first burglary (as to which probation had been revoked) would remain a felony and that if defendant failed to abide by the terms of the contemplated electronic monitoring, "he would serve a three-year stipulated prison sentence . . . ."

On January 22, 2015, defendant pleaded no contest to the new commercial burglary and vandalism, both as misdemeanors. His attorney indicated that he would "serve the three years . . . and that's going to be suspended pending 180 days of—completion of 180 days of electronic monitoring." However, after some off-the-record discussions, the court put the agreement on the record as follows: "instead of the defendant's probation reflecting a suspension of the imposition of sentence, the defendant would be placed on formal probation for the remainder of the term previously imposed; however, the Court would pronounce sentence and the probation would be—would constitute a suspension of the execution of the felony sentence. The felony sentence that would be—the execution of which would be suspended would be an upper term of three years for the felony commercial burglary 459." The court also commented that the terms of probation "would remain the same. They would require the defendant to complete 180

3

days. Instead of serving 180 days in the Inyo County jail, he would be directed, with the approval of the probation officer, to serve 180 days on electronic home detention subject to the probation officer's approval."

It was further agreed that in the second case, defendant would receive 180 days in jail for a misdemeanor burglary plea with probation and a suspended sentence, and the vandalism case would result in another concurrent 180 days in jail. Pleas in these cases were then taken. Defendant further admitted the allegations in the petition relating to revocation of his probation in the first case. The entire matter was then referred to probation "for a sentencing recommendation and report consistent with the settlement agreement as described including a change from suspension of imposition of sentence to suspension of execution of sentence.

Defendant was eventually ordered to appear for sentencing on February 24, 2015. He failed to show up in court and a bench warrant issued in each case. On March 3, 2015, the court was informed that defendant was being investigated with respect to yet another offense. This eventually resulted in the filing of a felony complaint alleging a violation of sections 422 (terrorist threats) and 417, subdivision (a)(1) (brandishing). Defendant was also charged with multiple counts of failure to appear. (§ 1320.)

It is clear that all parties were cognizant of the fact that defendant's behavior had been influenced by mental health issues and were anxious to reach a disposition of all cases, one which would avoid a prison commitment. After several continuances, by May 5, 2015, the parties were prepared to resolve the first few cases. Defendant's

4

attorney reminded the court that the original agreement was for three years in the first case with the hope that defendant would instead complete 180 days of electronic monitoring. However, due to defendant's failure to appear on February 24, probation found him ineligible for electronic monitoring. Hence, counsel agreed that "he's subject to the three years." When the court inquired, defendant agreed that he did "understand the settlement that's been described by your attorney" in those two cases. At the same hearing defendant entered no contest pleas to the charges under sections 422 and 1320.

Finally, on July 7, 2015, the court imposed a three-year term (to be served in county jail) for the original burglary and concurrent 12-month terms on the other matters.

Defendant contends on appeal that this was not a *Cruz-Vargas*[4] situation and that he was never advised of his right to withdraw his plea when the court changed its mind. (§ 1192.5.)[5] We partially agree with his premises but not with his conclusion.

---

[4] *People v. Cruz* (1988) 44 Cal.3d 1247 (*Cruz*); *People v. Vargas* (1990) 223 Cal.App.3d 1107 (*Vargas*). In *Cruz,* the Supreme Court held that a trial court could not impose a more severe sentence than that contemplated by a plea bargain simply to punish a defendant for his failure to appear for sentencing. (*Cruz*, *supra*, at p. 1253.) However, *Cruz* also suggested that a defendant could waive this protection (*Id*. at p. 1254, fn. 5) and *Vargas* approved the now-common practice in which a defendant and the court agree to a two-tiered sentencing scheme, in which the lower term will be imposed if the defendant dutifully appears for sentencing, and the higher term if he does not. (*Vargas*, *supra*, at p. 1113.)

[5] That section requires the court to inform a defendant entering a plea of guilty or nolo contendere that if the court later elects to disapprove of the agreement, the defendant may withdraw the plea.

II

DISCUSSION

First, the People argue that defendant's failure to object to the sentence at the time of sentencing waived or forfeited any claim of error or breach, citing *People v. Gordon* (1991) 229 Cal.App.3d 1523. *Gordon* is inapposite because the defendant *was* advised of his right to withdraw his plea when the trial court deviated from his expectations. (*Id*. at p. 1527.) If the defendant is unaware that he has such a right, failure to object to the sentence may not prevent raising the issue on appeal. (See *In re Jermaine B.* (1999) 69 Cal.App.4th 634, 641.) However, it appears—or at least it is reasonably possible—that any failure to object was based on the fact that the court's action correctly reflected the parties' understanding.

At one point the trial court and counsel appeared to believe that defendant had in fact executed a *Cruz/Vargas* waiver with respect to one or all of his cases, as the court commented, after discussing it with counsel, "So the *Cruz* waiver is applicable to all three of them." In fact, only the felony change of plea form includes such a waiver. Thus, with respect to the case which eventually resulted in a three-year term, defendant *did* agree that "if I willfully fail to appear for sentencing, any lid or sentencing agreement will be void, and the maximum sentence may be imposed."

However, defendant *did* appear for original sentencing in that case, and received the agreed probation and suspension of sentencing. Hence, we doubt that an increased sentence could have been based on the original waiver. Nor, indeed, is there any indication that this was the court's intent; it was only after the court revoked probation after new offenses were committed that the actual term to be imposed in the first case became the subject of discussion as the matter was apparently consensually re-opened in the hope of settling both (and later all) cases.

Although it is true that not all of the parties' discussions were as clearly reflected in the record as we might like, by December 16, 2014, the parties had evidently reached a tentative conclusion that defendant should be sentenced to three years in the first burglary case, but that execution of sentence would be suspended and he would have the opportunity to complete 180 days on electronic monitoring. In January 2015, the same understanding was expressed both by defendant's attorney and the court. And despite defendant's commission of still more offenses, this remained the agreement on which the eventual sentence was based.

Changing the case from one in which defendant was subject to a term not yet imposed, but possible, to one in which he was subject to a specified but suspended term did not alter the plea bargain. The original bargain always contemplated that if defendant failed to perform acceptably on probation, he would receive a prison term. Once he *did* fail on probation, the parties agreed to a three-year suspended term. Again, no violation of the original agreement.

As it turned out, of course, the suspended term was imposed because defendant was rejected as a proper subject for electronic monitoring due to his failure to appear in February 2015. It is at this point that we begin to see some merit in defendant's position.

On December 16, 2014, defendant's attorney described the agreement as involving 180 days of electronic monitoring with respect to all the cases then at issue. At that time, the case was continued so that the probation officer could advise the court as to defendant's suitability. After some kind of discussion off the record with the probation officer the court, as set out above, described the agreement as one which would "require the defendant to complete 180 days" but not in jail, rather with electronic monitoring. Later, defense counsel, referring to one of the subordinate cases, stated that "[defendant] will again do 180 days of jail concurrent . . . of course with the referral to electronic monitoring."

As we see in the case and defendant's position, the issue is whether or not it was a requirement that he serve 180 days *in electronic monitoring* rather than in jail. That is, were the parties—including defendant's attorney—mistaken in believing that because defendant was rejected from the electronic monitoring program, he *could not* satisfy the 180-day requirement by serving the time in jail?

On the face of it this makes little sense. Electronic monitoring is obviously less restrictive than jail, and was clearly so viewed by all parties. If defendant were willing to serve the 180 days in jail, arguably this would have satisfied the terms of his probation and prevented execution of the prison sentence.

8

However, on the appellate record we cannot conclude with certainty that this was the case. As we have set out above, all sides, including defendant's attorney, spoke and acted in accordance with an apparent understanding that defendant could only satisfy the conditions of probation by qualifying for, and completing, a period on electronic monitoring. This is not completely illogical. Off the record negotiations and discussions may have reached the point at which it was agreed that if defendant could not conduct himself so as to be acceptable for electronic monitoring, probation would be most likely ineffective. We cannot assume that both attorneys and the judge were all mistaken in their understanding of the bargain eventually concluded. In this context defendant's own failure to bring up the issue in the trial court does have some relevance.

This does not mean that defendant is without a remedy. Where the appellate record does not include clear evidence of attorney mistake—that is, ineffective assistance of counsel resulting in prejudice to the defendant—the remedy of habeas corpus is readily available. (*People v. Pope* (1979) 23 Cal.3d 412, 426; *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 839.) Our affirmance does not prevent defendant from filing a petition for writ of habeas corpus in the superior court, where the assertions which he now raises may be supported, if appropriate, by competent affidavits or declarations concerning the actual agreement or counsel's understanding thereof.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
                                                                Acting P. J.

We concur:

MILLER _____
                        J.

CODRINGTON _____
                        J.